WILSON v. KOURY et ux.

No. 32172. Jan. 28, 1947.

Rehearing Denied Jan. 13, 1948.

*188 P. 2d 349.*

W. E. Green, J. C. Farmer, Robt. J. Woolsey, and David H. Sanders, all of Tulsa, for plaintiff in error.

G. Earl Shaffer and Lawrence Mills, both of Tulsa, for defendants in error.

———

DAVISON, V.C.J. The American National Insurance Company, Galveston, Tex., whose Oklahoma representative and agent was Bomford Brothers Company, of Tulsa, Okla., was the owner of the real estate involved in this litigation, consisting of lots 1, 2, 3, and 4, block 24, O.T., Skiatook, Okla., commonly known as the "Craig property." This property consisted of the real estate above described, upon which was located a store building containing two ground floor units with second floor units over each. One ground floor unit was occupied by the plaintiff, E. L. Wilson, in which he conducted a general mercantile business under the name of "Wilson Mercantile Company." The other ground floor unit was occupied by the defendant N. J. Koury, who, with his wife, Nezera Sader Koury, the other defendant herein, operated a drugstore known as "City Drug Store." The second floor unit over the drugstore was occupied by Mrs. Koury as a photograph studio which she conducted in her spare time. All parties had been such tenants for many years.

The only bank account which either of the defendants had was one carried in the name of N. K. Koury and/or N. J. Koury and City Drug Store, in which were deposited the receipts from the drugstore and the studio, which latter business comprised a minor part of the entire business. Mrs. Koury was authorized to draw checks upon this bank account.

The Craig property originally cost the owner $43,567, but in 1939 was charged down in value to $10,200.

During the fall of 1943 the plaintiff and Mr. Koury each submitted to Bomford Brothers Company separate bids for the purchase of the property, each in the amount of $12,500. In order to avoid showing partiality, both bids were rejected by the owner with the suggestion that these parties arrange between themselves to submit a joint bid therefor. Pursuant to this suggestion, the plaintiff and Mr. Koury entered into a contract whereby they were to submit a joint bid of $12,500 for the property,

plaintiff to take title to that part occupied by him and pay $3,000 of the purchase price; defendant to take title to that part of the property occupied by himself and his wife and pay $9,500. At the suggestion of Mr. Koury the written joint offer to purchase, signed by himself and plaintiff, was taken by him personally to Bomford Brothers for submission to the owner.

Mrs. Koury testified that she knew some kind of a joint bid between her husband and the plaintiff had been made for the purchase of the property, but that she did not know the details of it, and that she did not like any kind of a partnership deal.

On the date of the letter written by Mr. Wright Bomford, a member of Bomford Brothers Company, submitting this offer to the owner, Mrs. Koury withdrew from the bank account above described sufficient money to purchase a cashier's check in the amount of $6,500 and contacted Mr. Wright Bomford about the Craig property. He testified that he told her of the proposal of purchase made by her husband and plaintiff and that she stated to him that she wanted to buy it and would pay more money for. it.

Mrs. Koury then made a written proposal to purchase the property for $12,-750, of which $6,500 was to be paid in cash, and the balance in installments secured by mortgage. Her conversation with Bomford was such that her proposal to purchase, and the cashier's check for $6,500, were transmitted by him to the owner by a letter, indicating that she would pay $13,000 for the property and recommending that her offer to purchase be accepted upon the basis of $13,000. Both proposals reached the office of the owner in the same mail.

The offer of Mrs. Koury was accepted, upon the condition that she pay $13,000, and the joint proposal of Mr. Koury and Mr. Wilson was rejected approximately two weeks after their submission.

The purchase price note and mortgage were executed by the defendants jointly, and when the same were received by the owner, a deed conveying the property was sent to Mrs. Koury.

The plaintiff, after being advised by Mr. Koury that the joint offer had been rejected, and by Mrs. Koury that she had purchased the property, requested her to convey to him that which he was to receive under the terms of his contract with her husband, and offered to increase the amount which he originally was to pay under the terms of said contract. Failing in this, he brought this action against Mr. and Mrs. Koury; asking the court to decree that Mrs. Koury held title to the property as constructive trustee for himself and Mr. Koury, to decree specific performance of the contract above described, and to adjudicate that the plaintiff was the owner of that portion of the property which was to be conveyed to him under the terms of the contract.

The trial court rendered judgment in favor of the defendants, from which this appeal has been perfected.

The parties are in agreement on two points herein involved. The first, that the defendant N. J. Koury could not individually purchase this property and thus avoid his responsibility under the terms of his contract with plaintiff. The second, that in a case of equitable cognizance this court will examine the entire record and, if the judgment is against the clear weight of the evidence, will reverse the same and render such judgment as should have been rendered.

Only a few days after the joint bid on the property was submitted by her husband, about which she knew, Mrs. Koury submitted a slightly higher bid, made the down payment from the bank account carried in her husband's name, and when the transaction was finally completed, signed the purchase price note and mortgage jointly with her husband. The defendants were husband and wife, living and working together harmoniously. They were not wealthy

people and the withdrawal, which amounted to about half of the entire bank account, was probably all they could comfortably withdraw therefrom, otherwise a larger part or all of the purchase price would have been paid rather than executing the mortgage.

It is inconceivable that Mrs. Koury would issue a check of the amount involved herein out of the bank account in her husband's name without his knowledge, consent, acquiescence and approval. Such would be repugnant to the accepted rules of marital relationship and contrary to all the rules of common sense and human nature.

Mr. Koury did not advise plaintiff that his wife was bidding on the Craig property. He did not ask the plaintiff to raise the joint bid. Mr. Koury helped his wife complete the purchase by joining with her in the purchase money note and mortgage. A close fiduciary relationship existed between Mr. Koury and plaintiff. Mr. Koury should not be permitted to do indirectly through his wife that which he could not have done directly. Such a transaction as was involved in the present case is contrary to equitable principles.

Mrs. Koury was not only the wife of Mr. Koury but was also interested in business with him to the extent that the entire income of both was deposited in one bank account in his name. She spent most of her time in the drugstore acting as a partner in the business. Whether her position was that of partner, agent or clerk of her husband, she stood in a position imposing a duty upon her extending to the plaintiff Wilson for whom her husband was acting as agent in acquiring this property.

In the New York case of Gardner v. Ogden, 22 N.Y. 327, 78 Am. Dec. 192, the Ogden firm was the agent of plaintiff for the management and sale of plaintiff's property. Smith was a clerk of Ogden and without Ogden's knowledge purchased the property. Plaintiff sued Ogden and Smith for reconveyance and damages for fraud. The court held that the disability of Ogden to purchase plaintiff's property extended to Ogden's clerks, agents, subagents and partners. Therein the New York court said:

"It would work an entire abrogation of the rule to hold the principal subject to the operation of the rule, and exempt the clerks and agents from its effects." Mechem on Agency (2d Ed.) sec. 1202; Iroquois Iron Co. v. Kruse, 241 Fed. 433.

This rule applies herein. Mrs. Koury, the wife, clerk, agent and, in effect, business partner of her husband, held such a fiduciary position that she could not, under the facts disclosed by the record, purchase the property which her husband could not purchase to the exclusion of plaintiff.

Because of our opinion on this point it is not necessary to pass upon the other questions presented by this appeal.

Equity will not permit the defendants to profit by their conduct as shown by the evidence in this case. The judgment of the trial court is not supported by the evidence and is clearly against the weight thereof.

The judgment is reversed and the cause remanded, with directions to render judgment in accordance with the views herein expressed and to adjust the equities between the parties.

HURST, C.J., and OSBORN, BAYLESS, GIBSON, and ARNOLD, JJ., concur. RILEY, WELCH, and CORN, JJ., dissent.